

FILED

JAN 0 9 2014

Deputy Clerk, U.S. District Court
Middle District of Louisiana
Baton Rouge, La.

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

## INDICTMENT FOR HEALTH CARE FRAUD, WIRE FRAUD, AND FORFEITURE

| UNITED STATES OF AMERICA | : | CRIMINAL NO. 14-2-JJB - RLB |
| | : | |
| V. | : | 18 U.S.C. § 1347 |
| | : | 18 U.S.C. § 1343 |
| MONA PATRICE CARTER | : | 18 U.S.C. § 2 |
| | : | 18 U.S.C. § 982 |
| | : | |

## THE GRAND JURY CHARGES

### General Allegations

At all times relevant to this Indictment:

Medicare Part D and the Louisiana Medicaid Program

1.      The Medicare Program ("Medicare") was a federal program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare are prescribed by statute and by federal regulations under the auspices of the United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.      "Part D" of the Medicare program provides prescription drug coverage to persons who are eligible for Medicare. Under the program, eligible Medicare beneficiaries enrolled in a Medicare Prescription Drug Plan that added prescription drug coverage to traditional Medicare.

4.     A Medicare Prescription Drug Plan is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

5.     Under Part D of the Medicare program, pharmacies – or in some cases, group purchasing organizations acting on behalf of pharmacies – entered into agreements, known as Retail Network Agreements, with the Medicare Prescription Drug Plans.  Pursuant to these Retail Network Agreements, the pharmacies agreed to, among other things, dispense prescription drugs in accordance with federal and state rules and regulations.

6.     The Louisiana Medicaid program was a joint federal and state program that provided medical benefits to low-income individuals and families.  The Louisiana Medicaid program was managed by the State of Louisiana Department of Health and Hospitals. Individuals who received benefits under the Louisiana Medicaid program were also commonly referred to as Medicaid "beneficiaries."

7.     The Louisiana Medicaid program was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

8.     In order to be reimbursed for prescription drugs provided to Medicare beneficiaries, a pharmacy was required to first obtain a prescription authorized by a physician or other qualified medical provider.  Once a pharmacy obtained the prescription – either from the health care provider or from the beneficiary – the pharmacy submitted the claim for the prescription drug to a Pharmacy Benefit Manager ("PBM").  PBMs were contracted by the Medicare Prescription Drug Plans – or in some cases were business units within the plans – to process claims for prescription drug benefits on behalf of the plans, in accordance with the requirements set forth by the plans.

9.     Once the PBM approved the claim, a prescription drug "label" was printed by the pharmacy, and the prescription drug was then dispensed to the Medicare beneficiary.  Among other things, this label included the name of the Medicare beneficiary, the drugs dispensed, the lot number of the drugs dispensed, and the expiration date of the drugs.  Later, the PBM paid the pharmacy for the claim for the prescription drug event (e.g. the dispensing of prescription drugs to a beneficiary), minus any co-pay to be paid by the Medicare beneficiary.  The PBM, in turn, was reimbursed by the Medicare Prescription Drug Plan for those prescription drug claims.

10.    Similarly, in order to be reimbursed for prescription drugs provided to Medicaid beneficiaries, a pharmacy was required to first obtain a prescription authorized by a physician or other qualified medical provider.  Once a pharmacy obtained the prescription, the pharmacy submitted the claim to Medicaid, through a Medicaid contractor, for approval.  If the claim was approved, a prescription drug "label" was printed by the pharmacy, and the prescription drug was then dispensed to the Medicaid beneficiary.

Regulation of Prescription Drugs

11.    The Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-399d, defines a "prescription drug" as a drug which, because of its toxicity and other potential for harmful effects, is not considered safe for use except under the supervision of a practitioner licensed by State law to administer such drugs. *See* 21 U.S.C. § 353(b)(1)(A).

12.    The FDCA makes unlawful any act that causes a drug to be adulterated or misbranded after it has moved in interstate commerce and while it is held for sale.  21 U.S.C. § 331(k).

13.     A drug is adulterated "if it has been prepared, packed, or held under insanitary conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health."  21 U.S.C. § 351(a)(2)(A).

14.     A drug is misbranded if, among other things, its label is "false or misleading in any particular." 21 U.S.C. § 352(a).  A drug is also misbranded if it is missing any information required under the authority of the FDCA, such as an expiration date on its outer package, or a correct lot number.  21 U.S.C. § 352(c); 21 C.F.R. §§ 211.137, 201.17-18.

15.     Further, under the Louisiana Administrative code, prescription drugs must be "procured and possessed in the course of the practice of pharmacy by a permitted pharmacy" and "stored in a permitted pharmacy under the immediate control and responsibility of a pharmacist." 46 La. Admin. Code  § 2501.  In addition, the code specifically states that "[d]rugs dispensed on prescription to a patient shall not be accepted for return, exchange, or re-dispensing by any pharmacist or pharmacy after such drugs have been removed from the pharmacy premises where they were dispensed."  46 La. Admin. Code  § 2503.

The Fraudulent Scheme

16.     Community Pharmacy Number 1 ("Community Pharmacy") was a pharmacy in Baton Rouge, Louisiana, that began operating in or around April 24, 1992.  Community Pharmacy purported to be engaged in the business of providing prescription drugs to Medicare and Medicaid beneficiaries.

17.     Community Pharmacy was a "closed door" pharmacy, meaning that it was a pharmacy that generally did not do retail business with the general public, but rather provided prescription drugs to health care institutions such as hospitals, personal-care homes, and nursing homes.

4

18.     Community Pharmacy entered into Retail Network Agreements with various Medicare Prescription Drug Plans.  By entering into these agreements, Community Pharmacy agreed to, among other things, comply with federal and state laws regarding the dispensing of prescription drugs.

19.     Defendant **MONA PATRICE CARTER**, a resident of Baker, Louisiana, owned Community Pharmacy, and served as its Pharmacist in Charge.

20.     Community Pharmacy delivered prescription drugs to health care institutions using delivery drivers employed by the pharmacy.

21.     When prescription drugs were left unconsumed by the recipients at these institutions, these unconsumed prescription drugs were retrieved by Community Pharmacy. Employees of Community Pharmacy, at the direction of **MONA PATRICE CARTER**, would repackage these unconsumed, previously dispensed prescription drugs for the purpose of re-dispensing them, in violation of state and federal laws and regulations concerning the dispensing of prescription drugs.

22.     Beginning in or around January 2008 and continuing to and including the present, defendant **MONA PATRICE CARTER** engaged in a scheme to defraud and to obtain money from various Medicare Prescription Drug Plans and the Louisiana Medicaid program by submitting and causing to be submitted fraudulent claims for: (i) prescription drugs that were adulterated; (ii) prescription drugs that were misbranded; (iii) prescription drugs that were re-dispensed; and/or (iv)  prescription drugs that had been previously billed to Medicare Prescription Drug Plans and/or the Louisiana Medicaid Program.

23.     Between in or about January 2008 and in or about February 2013, Community Pharmacy was paid in excess of $11.9 million for dispensing prescription drugs to Medicare and/or Medicaid beneficiaries.

## COUNT 1
### Health Care Fraud
### (18 U.S.C. § 1347)

24.     Paragraphs 1 through 23 of this Indictment are re-alleged and incorporated as though fully set forth herein.

25.     Beginning in or around January 2008 and continuing to and including the present, within the Middle District of Louisiana and elsewhere, defendant **MONA PATRICE CARTER** did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud health care benefit programs, as defined in Title 18, United States Code, Section 24(b), to wit, various Medicare Prescription Drug Plans and the Louisiana Medicaid program, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of, and payment for, prescription drugs.

The above is a violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 2
### Wire Fraud
### (18 U.S.C. § 1343)

26.     Paragraphs 1 through 23 of this Indictment are re-alleged and incorporated as though fully set forth herein.

27.     Beginning in or around January 2008 and continuing to and including the present, within the Middle District of Louisiana and elsewhere, defendant **MONA PATRICE CARTER** devised and intended to devise a scheme to defraud and to obtain money and property from

6

various Medicare Prescription Drug Plans and the Louisiana Medicaid program by means of materially false and fraudulent pretenses, representations, and promises.

28.     On or about September 23, 2010, in the Middle District of Louisiana and elsewhere, defendant **MONA PATRICE CARTER**, having devised the scheme described in the previous paragraph of this Indictment, for the purpose of executing such scheme, and attempting to do so, knowingly caused to be transmitted by means of wire communication in interstate commerce, a facsimile transmittal from Community Pharmacy to Company A, a preferred pharmacy network located in Overland Park, Kansas, transmitting a provider authorization agreement between Community Pharmacy and Company A, which agreement allowed Community Pharmacy to submit claims for prescription drugs to certain Medicare Part D plans.

The above is a violation of Title 18, United States Code, Sections 1343 and 2.

## Forfeiture Allegation

29.     The allegations contained in Counts 1 and 2 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant has an interest pursuant to the provisions of Title 18, United States Code, Section 982(a)(7) and the procedures outlined at Title 21, United States Code, Section 853.

30.     Upon conviction on Counts 1 and 2 of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses.

31.     The property that is subject to forfeiture includes, but is not limited to, the

following:

          a.      A money judgment in an amount up to the gross proceeds of the offenses

                set forth in Counts 1 and 2 of the Indictment; and

          b.      All funds on deposit at American Gateway Bank, Account Number

                xx9324, in the name of Community Pharmacy Number 1, Inc.

32.     If, as a result of any act or omission of the defendant, the property described

above that is subject to forfeiture,

          a.      cannot be located upon the exercise of due diligence;

          b.      has been transferred or sold to, or deposited with a third party;

          c.      has been placed beyond the jurisdiction of the Court;

          d.      has been substantially diminished in value; or

          e.      has been commingled with other property which cannot be subdivided

                without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

made applicable by Title 18, United States Code, Section 982(b), to seek forfeiture of any other

property of the defendant up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Sections 982(a)(7) and 982(b), and the

procedures outlined at Title 21, United States Code, Section 853.

UNITED STATES OF AMERICA, by

**A TRUE BILL**

J. WALTER GREEN
UNITED STATES ATTORNEY
MIDDLE DISTRICT OF LOUISIANA

GRAND JURY FOREPERSON

ARUNABHA BHOUMIK
TIMOTHY LOPER
TRIAL ATTORNEYS
CRIMINAL FRAUD SECTION
DEPARTMENT OF JUSTICE

1 - 9 - 14

DATE

9

**Criminal Cover Sheet** **U.S. District Court**

| | |
|---|---|
| **Place of Offense:** | **Matter to be sealed:** ☒ No  ☐ Yes |

City ___Baton Rouge_____

**Related Case Information:**

County/Parish_East Baton Rouge_____

Superseding Indictment _____ Docket Number 14-

Same Defendant _____  New Defendant __X__

Magistrate Case Number _____

Search Warrant Case No. _____

R 20/ R 40 from District of _____

**Any Other Related Cases:** _____

**Defendant Information:**

Defendant Name  Mona Patrice Carter

Alias

Address ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Birthdate ▮▮▮▮▮▮     SS #▮▮▮▮▮▮     Sex  F     Race     Nationality

**U.S. Attorney Information:**

AUSA     Arunabha Bhoumik                                    Bar #

**Interpreter:** ☒ No  ☐ Yes     **List language and/or dialect:** _____

**Location Status:**

Arrest Date _____

_____ Already in Federal Custody as of _____

_____ Already in State Custody

_____ On Pretrial Release

**U.S.C. Citations**

**Total # of Counts:** ___2___     ☐ Petty     ☐ Misdemeanor     ☒ Felony

| | **Index Key/Code** | **Description of Offense Charged** | **Count(s)** |
|---|---|---|---|
| set 1 | 18 U,S,C, 1347 | Health Care Fraud | 1 |
| set 2 | 18 U.S.C. 1343 | Wire Fraud | 2 |
| set 3 | | | |
| set 4 | | | |

(May be continued on second sheet)

**Date:** _1/9/15_     **Signature of AUSA:** _____

**District Court Case Number (To be filled in by deputy clerk):** _____